1    Christopher J. Solberg
     1966 Mohawk Drive
2    Pleasant Hill, CA 94523
     maricopaa@sbcglobal.net
3    Telephone:    (510) 932-5252

4    Plaintiff In Pro Per

5

6

7

8                 **UNITED STATES DISTRICT COURT**

9               **NORTHERN DISTRICT OF CALIFORNIA**

10

11    CHRISTOPHER J. SOLBERG,

12             Plaintiff,               **CASE NO. 3:10-cv-04600-JL**

13       v.

14    NDEx West, L.L.C.; WACHOVIA        **FIRST AMENDED VERIFIED**
     MORTGAGE; WELLS FARGO BANK,      **COMPLAINT FOR**
15    FSB; and DOES 1 through 20, inclusive,

16            Defendants.           **DAMAGES IN EXCESS**

                                       **OF $25,000.00**
17

18

19    Plaintiffs Christopher J. Solberg ("Plaintiff"), complain against defendants

20    NDEx West, L.L.C.;WACHOVIA MORTGAGE; WELLS FARGO BANK, FSB and Does 1

     through 20, inclusive, and each of them, states and alleges as follows:
21

22                              **THE PARTIES**

23        1.      Plaintiff is an individual residing in Contra County, California.

24        2.      The real property that is the subject of this lawsuit is 2135 Ascot Drive #7, Moraga

     CA ("Property") and is located in Contra Costa County.
25

26        3.      On information and belief, Defendant NDEx West, L.L.C. ("NDEx") is a business,

     formed as a limited liability company, headquartered and domiciled in Addison, Texas.
27

28        4.      On information and belief, Defendant Wachovia Mortgage ("Wachovia") is a

1    Christopher J. Solberg
     1966 Mohawk Drive
2    Pleasant Hill, CA 94523
     maricopaa@sbcglobal.net
3    Telephone:    (510) 932-5252

4    Plaintiff In Pro Per

**FILED**

2010 OCT 12  A 8: 10

5

6

7

8             **SUPERIOR COURT OF CALIFORNIA**

9             **COUNTY OF CONTRA COSTA**

10

11    CHRISTOPHER J. SOLBERG,

12          Plaintiff,               **CASE NO. C10 - 02667**

13        v.

14    NDEx West, L.L.C.; WACHOVIA      **FIRST AMENDED VERIFIED**
     MORTGAGE; WELLS FARGO BANK,    **COMPLAINT FOR**
15    FSB; and DOES 1 through 20, inclusive,

16          Defendants.            **DAMAGES IN EXCESS**

17                                           **OF $25,000.00**

18

19    Plaintiffs Christopher J. Solberg ("Plaintiff"), complain against defendants

20    NDEx West, L.L.C.;WACHOVIA MORTGAGE; WELLS FARGO BANK, FSB and Does 1

21    through 20, inclusive, and each of them, states and alleges as follows:

                              **THE PARTIES**

22        1.      Plaintiff is an individual residing in Contra County, California.

23        2.      The real property that is the subject of this lawsuit is 2135 Ascot Drive #7, Moraga

24    CA ("Property") and is located in Contra Costa County.

25        3.      On information and belief, Defendant NDEx West, L.L.C. ("NDEx") is a business,

26    formed as a limited liability company, headquartered and domiciled in Addison, Texas.

27        4.      On information and belief, Defendant Wachovia Mortgage ("Wachovia") is a

28

-1-

AMENDED COMPLAINT                     Case No C10 - 02667

1 business operating in Contra Costa County, California, form unknown, headquarters and domicile
2 unknown

3       5.       On information and belief, Defendant Wells Fargo Bank, FSB ("Wells") is a
4 business operating in Contra Costa County, California, form unknown, headquarters and
5 domiciled at 420 Montgomery Street, San Francisco, CA 94104.

6       6.       The true names and capacities, whether individual, corporate, associate,
7 partnership, or otherwise, of defendants named herein as Does 1 through 20, inclusive, are
8 unknown to Plaintiff, who therefore sues said defendants by such fictitious names, and Plaintiff
9 will ask for leave to amend this complaint to allege their true names and capacities when the same
10 have been ascertained. Plaintiff is informed and believes and thereupon alleges that each of the
11 fictitiously named defendants is responsible in some manner for the occurrences herein alleged,
12 that the Plaintiff's damages as herein alleged were proximately caused by their conduct, that each
13 of the fictitiously named defendants is indebted to Plaintiff as alleged in this complaint, and that

14                                           **VENUE**

15       7.       Venue is appropriate in this Court because the Property that is subject to this
16 lawsuit is in Contra Costa County and all three known Defendants actively conduct business in
17 Contra Costa County at present.

18                      **FACTS COMMON TO ALL CAUSES OF ACTION**

19       8.       Upon information and belief, in early 2007, Leslie Lou Kish ("Trustor") the then
20 fee owner of the Property, signed a Negative Amortization ("Neg-Am 1st MTG")1st note and
21 deed of trust .

22       9.       In April 9th, 2007, Trustor, the then fee owner of the Property, signed a 2nd note
23 and deed of trust ("2nd MTG") in favor of Plaintiff.

24       10.      On May 9th, 2010, in Contra Costa County, Plaintiff commenced an action to
25 foreclose on the Property by recording a notice of default and serving same upon Trustor.  This
26 foreclosure proceeding resulted in the August 30th, 2010 trustee sale on the 2nd MTG wherein fee
27 title to the Property reverted to Plaintiff.

28       11.      On May 29th, 2010, in Contra Costa County, Defendants commenced an action to

1  foreclose on the Property by recording a notice of default.

2  12. On August 26th, 2010, defendants, and all of them, recorded a notice of sale which

3  scheduled a trustee sale to foreclose the Neg-Am 1st MTG on the Property. Copy of said notice

4  of sale is attached hereto as "Exhibit A" and made a part hereof by this reference.

5  13. On August 3 0th, 2010, Plaintiff Solberg, sole beneficiary of 2nd MTG acquired fee

6  simple title to the Property from Trustor via 2nd MTG Trustee Sale conducted under power of sale

7  provisions contained in 2nd MTG. Copy of this Trustee's Deed Upon Sale is attached hereto as

8  "Exhibit B" and made a part hereof by this reference.

9  14. On August 31st, 2010, Plaintiffs, having received a copy of notice of sale ("Exhibit

10  A") and immediately attempted to call Defendant NDEx West, L.L.C. to obtain information

11  regarding the validity of defendants claim of ownership of the beneficial interest in Neg-Am 1st

12  MTG and to obtain a copy of the note underlying the Neg-Am 1st MTG and to obtain other

13  information regarding the amount of money the defendants were claiming was owed as well as

14  any other monies defendants might be claiming were due or overdue.

15  15. On August 31st, 2010, Defendant NDEx's customer service representative told

16  Plaintiff Solberg that he "had no standing" despite Plaintiffs' offer to provide a copy of 2nd MTG

17  and the Trustee's Deed Upon Sale ("Exhibit B") and refused to provide any information and

18  directed Plaintiff to contact Wells.

19  16. On August 31st, 2010, Defendant Wells' customer service representative told

20  Plaintiff Solberg that he "had no standing" despite Plaintiffs' offer to provide a copy of 2nd MTG

21  and the Trustee's Deed Upon Sale ("Exhibit B") and refused to provide any information and

22  directed Plaintiff to contact Wachovia.

23  17. On August 31st, 2010, Defendant Wachovia's customer service representative told

24  Plaintiff Solberg that he "had no standing" despite Plaintiffs' offer to provide a copy of 2nd MTG

25  and the Trustee's Deed Upon Sale ("Exhibit B") and refused to provide any information and

26  directed Plaintiff to contact NDEx.

27  18. On August 31st, 2010, after repeated efforts, Plaintiff Solberg reached "Christina

28  C," a customer service representative of NDEx and attempted to persuade her to "put in a request"

-3-

1    for the required information.  As she was clearly uncomfortable and tentative about this, she

2    connected Plaintiff with her supervisor, one Alex Escobar, who informed Plaintiff that even if the

3    request for information was granted and fulfilled, it would take ten business days for the

4    information to be delivered to Plaintiffs via email.

5         19.    On September 7th, 2010, Plaintiff received an email from NDEx purporting to

6    contain reinstatement figures.  A copy this document, hereinafter "Quote #1, is attached hereto as

7    "Exhibit C" and made a part hereof by this reference.

8         20.    On September 9th, 2010, Plaintiffs again phoned NDEx to obtain information

9    regarding the explanations for the defendants' claims of monies due or overdue and was directed

10   by NDEx to contact Wells.

11        21.    On September 9th, 2010, Plaintiffs again phoned Wells to obtain information

12   regarding the explanations for the defendants' claim of monies due or overdue and was directed

13   by Wells to contact Wachovia.

14        22.    On September 9th, 2010, Plaintiffs again phoned Wachovia to obtain information

15   regarding the explanations for the defendants' claim of monies due or overdue and was directed

16   to contact NDEx.

17        23.    On September 17th, 2010, Plaintiff received a second reinstatement quote, this time

18   under Defendant Wachovia's letterhead, hereinafter "Quote #2" a copy of which is attached

19   hereto as "Exhibit D" and made a part hereof by this reference.

20        24.    On September 17th, 2010, Plaintiff received a copy of the Neg-Am 1st Note

21   (hereinafter "Note" and attached hereto as "Exhibit E" and  made part ( hereof ) from Defendants'

22   lawyer via email, however the Note shed no light on the amount of remaining principal balance,

23   on the interest rate, on the index or on the payment schedule due to the fact that it is a Neg-Am

24   type note and those key factors adjust.  The primary problem is that the index to which the loan

25   was initially tied is no longer in existence and Defendants have refused or been unable to identify

26   its replacement.

27        25.    On September 27th, 2010, defendants conducted a foreclosure on their Neg-Am 1st

28   Note and by so doing attempted to take fee simple title from Plaintiff.

-4-

1

2                                   **FIRST CAUSE OF ACTION**

3

4                                        **(Breach of Contract)**

5

6          26.      Plaintiffs incorporate by reference all preceding paragraphs as though fully set

7    forth herein.

8          27.      Defendants and all of them, were under contractual obligation to Trustor, and also

9    Plaintiff as Trustor's successor in interest, to limit the payment changes to the Neg-Am 1st Note

10   to no more frequently than once per year and yet, unilaterally, and without consent of Trustor or

11   Plaintiff and without any notice to Trustor or Plaintiff, Defendants, and each of them, attempted

12   to adjust the amount of the payment four times within a twenty three month period.  This many

13   different payments is not possible with payment adjustments scheduled to change no more than

14   once per year, in the month of April.  The schedule for payment adjustments is described more

15   particularly in the Note, Sections 3(C) and 3(D).

16         28.      Defendants, in fact, apparently were calculating the Neg-Am payment changes on

17   the basis of a six month payment change period, to which they were not entitled.  There is no

18   other explanation possible for the three different six month sets of payments shown in Quote #1.

19   This bi-annual rather than annual payment change, whether a result of error or malice, resulted in

20   a clear over-statement of the amount necessary for reinstatement.

21         29.      Defendants have utilized an index in the calculation of interest rate which has

22   never been disclosed to either Trustor or Plaintiff, in violation of the terms of the Note.

23

24                                  **SECOND CAUSE OF ACTION**

25                                            **(Fraud)**.

26         30.      Plaintiff incorporates by reference all preceding paragraphs as though fully set

27   forth herein

28         31.      Plaintiff alleges that NDEx, Wells and Wachovia had no standing to conduct a

                                                -5-

1  Trustee sale of the Property because not one or any of them owns any beneficial interest in the

2  Neg-Am 1st Note.

3       WHEREFORE, Plaintiffs pray for judgment as more fully set forth below.

4  ### THIRD CAUSE OF ACTION

5  **(Improper Procedures)**

6      29.    Plaintiff incorporates by reference all preceding paragraphs as though fully set

7  forth herein.

8      30.    At no time between August 26th, 2010 and September 13th, 2010, was any notice of

9  Defendants' imminent trustee sale posted on the Property.

10      31.    The laws of the State of California, including Civic Code Sections 2924.8, require

11  foreclosing trustees, Defendant NDEx, to post of copy of the notice of trustee sale on the

12  Property.

13      WHEREFORE, Plaintiff prays for judgment as more fully set forth below.

14  ### FOURTH CAUSE OF ACTION

15  **(Bad Faith)**

16      32.    Plaintiff incorporates by reference all preceding paragraphs as though fully set

17  forth herein.

18      33.    Defendants and each of them acted in bad faith by willfully and intentionally

19  refusing to disclose to Plaintiff the method of determining and calculation of the interest rate they

20  were demanding.

21      34.    Defendants and each of them acted in bad faith by willfully refusing to disclose to

22  Plaintiff the method of determining and calculation of the underlying remaining principal balance

23  on the Neg-Am 1st Note they were demanding.

24      35.    Defendants and each of them acted in bad faith by willfully and intentionally

25  refusing to disclose to Plaintiff the method of determining and calculation of the monthly

26  payments they were demanding from Plaintiff because Defendants, and each of them, knew that

27  whatever methods they were using were fraudulent and resulted in an inaccurate demand.

28

1      36.    Defendants and each of them acted in bad faith by willfully and intentionally

2    misdirecting Plaintiff from one Defendant to the next in a never-ending circle with no intention of

3    providing any information beyond their unjustified demand for money and with the clear intent of

4    using up any remaining time prior to defendants planned trustee sale at which defendants

5    anticipated Plaintiffs' interest in the Property would be wiped out and anticipated Plaintiff's

6    interest in pursuing this matter would also be wiped out.

7        WHEREFORE, Plaintiffs pray for judgment as more fully set forth below.

8

9                          **FIFTH CAUSE OF ACTION**

10               **(Disputed Obligations – Misrepresentation - Illegal Acts)**

11      37.    Plaintiff incorporates by reference all preceding paragraphs as though fully set

12    forth herein.

13      38.    Plaintiff alleges Defendants and all of them have repeatedly refused and failed to

14    identify by name or other method, the alternative index that underlies the interest rate demands

15    they have made and have misrepresented to Plaintiff and the Court. (by Defendants' attorney

16    Rapkine's statement to Commissioner Sanders in Department 60 of this Court that a "PhD in

17    Keynesian economics is required to calculate the interest rate" when she asked him if to state the

18    interest rate to the Court.)   The interest rate is calculated using simple arithmetic:  Index plus

19    margin.  The margin is known (Section 2(E) of the Note) but the index is no longer known.

20      39.    The original index, as defined in Section 2(D) of the Note no longer exists.  The

21    alternative index, as defined in Section 2(F) of the note, has never been identified by Defendants

22    and is not known.  This willful failure to identify or provide the name or nature of the alternative

23    index makes it impossible to calculate the interest rate in any way.  Further, Defendants never

24    provided the notice regarding a substitute index that is mandated in Section 2(F) of the Note.

25      40.    Defendants provided two different reinstatement quotes.  Quote #1 ("Exhibit "C")

26    shows payments changing in six month periods.  This does not comport with the terms of the

27    Note.

28      41.    Quote #1 also shows a single late charge of $92.84 without explanation of how

1    such a charge was computed.

2        42.    Quote #1 also shows a single late charge of $1620.12 without explanation of how

3    such an astronomically large charge was computed or why it was so different from the other late

4    charge they demanded.

5        43.    Quote #1 also shows a charge labeled "other charge" for $555.20 without any

6    justification or explanation whatsoever.

7        44.    Quote #1 also shows a charge labeled "corporate advance charges" for $30.00

8    without any justification or explanation whatsoever.

9        45.    Quote #1 shows four separate groupings of unpaid payments without identifying

10   or justifying in any way the particular period of time such payments may have applied.

11        46.    Defendants provided the second reinstatement quote, Quote #2, dated September

12   17th, 2010 ("Exhibit D") showing different numbers when compared against Quote #1.   The two

13   quotes are incompatible with one another.

14        47.    Quote #2 shows "other fees" mysteriously reduced to from $555.20 to $455.20,

15   "Trustee Fees" changed from $2934.44 to "foreclosure" fees of $2901.37, "corporate advance"

16   changed from $30.00 to $285.00 and "property inspection fee" changed from $10.00 to $140.00;

17   all without any explanation whatsoever.   When explanation was requested by Plaintiff,

18   Defendants would not or could not supply it.

19        48.    The inescapable conclusion after the comparison of Quote #1 against Quote #2 and

20   both Quotes against the Neg-Am 1st Note is that the Defendants simply invented numbers without

21   knowledge, understanding, justification or any clear method in place to guide their actions.

22   Couple this fact with lawyer Rapkine's admission in open Court on September 14th, 2010 that he

23   could not describe the index and that one would need "a PhD in Keynesian economics to

24   calculate the interest rate" and it seems obvious that the Defendants, and all of them, are either

25   ill-equipped or unwilling to provide accurate and justified representations of any of the

26   underlying obligations yet were at all times fully willing to accept more than $41,000.00 of

27   Plaintiff's money anyway, all with nobody suggesting they had any idea of what obligation(s)

28   might remain for Plaintiff if, when or after he paid Defendants the demanded $41,000+.

49.     Under California Civil Code Sections 2903, 2904 and 2905, Plaintiff had the right to redeem and reinstate Defendants' Neg-Am 1st Note and stave off foreclosure.  Plaintiff also had the right to do so "in the same manner as its owner might." Such rights clearly include the right to know what the Defendant lien-holders /claimants were making against the Trustor and by succession, against Plaintiff.  Defendants, and all of them, repeatedly refused to explain or justify in any way their demands for money.   By refusing to divulge to Plaintiff the nature or computation of the obligation under discussion, they effectively prevented Plaintiff, as they would have prevented any reasonable person, from paying money to reinstate the Neg-Am 1st Note.

50.     Under California Civil Code Section 2924(C) and 2924(E) Plaintiff is entitled to reinstate the senior mortgage by payment of outstanding defaulted obligations that are factually known to the Defendants.  These amounts are specifically limited in size and scope to those included and enumerated in the Civil Code.  Defendants' Quote #1 and Quote#2 do not comply with the requirements of the Civil Code in that they are vague to a fault.  This is egregiously true in the present case, where the rate of interest changes each and every month, where the principal balance owed can go up or down, where the payments are scheduled to change annually according to arcane criteria, said criteria no longer being knowable without Defendants' cooperation, and especially when the underlying index that is the sole cause for interest rate adjustments is no longer capable of being defined by the governing document, the Note and where Defendants  have steadfastly maintained they are under no compulsion to define and have in fact refused to define said index and by so doing, refused to define said interest rate and refused to demonstrate how the principal balance has increased and refused to demonstrate when or how they decided to change the payment schedule in a manner that does not comport with the terms of the Neg-Am 1st Note.  Surely those enacting this legislation could not possibly have intended to grant the right to reinstate to junior lien-holders without also granting them a right to the knowledge of the terms of the very obligation being reinstated!  To argue for reinstatement with zero knowledge of the terms of the reinstatement is to reduce the junior lien-holder's right of reinstatement to a useless triviality and would totally gut the legislation. Still, Defendants refused

-9-

1   to identify the index or explain their reinstatement figures, neither those shown on Quote #1 nor

2   those shown on Quote #2, which as previously stated, do not even match each other.

3       51.     By refusing to divulge to Plaintiff the nature or computation of the obligation

4   under discussion, they effectively prevented Plaintiff, as they would have prevented any

5   reasonable person, from paying money to reinstate the Neg-Am 1st Note.

6

7       WHEREFORE, Plaintiffs pray for judgment as more fully set forth below.

8

9                               **SIXTH CAUSE OF ACTION**

10                                  **(Breach of Duty)**

11      52.     Plaintiff incorporates by reference all preceding paragraphs as though fully set

12  forth herein.

13      53.     The laws of the State of California, including Civic Code Sections 2923.6a(2),

14  require foreclosing beneficiaries and their appointees or successors to maximize net present value

15  to beneficiaries' investors. Had defendants, or any of them, bothered to duly consider the offer

16  Plaintiff made to Defendants' lawyer Rapkine, Defendants, and all of them, would be obliged to

17  accept Plaintiff's offer under this statute as having a higher net present value than foreclosure

18  could reasonably be expected to have.

19      54.     On September 27th, 2010, proving the above point through their own actions,

20  Defendants credit bid less than $330,000.00 in their own foreclosure sale, a value known by

21  Defendants to be less than Plaintiff was willing to pay them. By so doing, they violated their

22  obligations under CCC Sections stated in Paragraph 51, above, and damaged their investors.

23      55.     Since Wells has taken approximately $25Billion in TARP money from the Federal

24  Government, Plaintiff, as a citizen/taxpayer in the United States of America, is qualified as an

25  investor, as defined within the California Civil Code, has been damaged by Defendants' actions,

26  and therefore has standing to make this claim.

27      WHEREFORE, Plaintiff prays for judgment as more fully set forth below.

28

-10-

1

## PRAYER FOR RELIEF

2

3        WHEREFORE, Plaintiff prays for judgment on all causes of action against all Defendants

4    as follows:

5        1.    The Court to set aside the foreclosure sale that took place on September 27th, 2010

6              and restore Plaintiffs' property to Plaintiff, both title and possession.

7        2.    The sum of $64,209.33; (See "Exhibit B" attached hereto and made part hereof)

8        3.    Loss of rental income according to proof;

9        4.    For general damages according to proof;

10       5.    For special and punitive damages;

11       6.    For costs of suit herein occurred; and

12       7.    For such other and further relief as the Court may deem just and proper.

13

14   Dated: October 11th, 2010              CHRISTOPHER J. SOLBERG

15

16                              By: Christoph JSolberg

17                                  Christopher J. Solberg
                                    Plaintiff in Pro Per

18

19

20                                  ## VERIFICATION

21

22   I declare under penalty of perjury under the laws of the State of California, that I have read the
     above complaint and I know it is true of my own knowledge, except as to those things stated upon
23   information and belief, and as to those I believe it to be true.

24   Executed on October 11th, 2010 at Pleasant Hill, California

25

26

27   Christoph JSolberg
     Christopher J. Solberg, Plaintiff and Declarant

28
                                        -11-

"EXHIBIT A"

Recording requested by:
**LSI Title Company**

When Recorded Mail To:
**NDEx West, L.L.C.**
**15000 Surveyor Boulevard, Suite 500**
**Addison, Texas 75001-9013**
**(866) 795-1852**

APN #: 255-740-007-0
Property Address:
**2135 ASCOT DR # 7**
**MORAGA, CALIFORNIA 94556**

|||||||||||||||||||||||||||||||||
NOTS20100015004954

Space above this line for Recorder's use only

Trustee Sale No. : **20100015004954**      Title Order No.: **100319107**      FHA/VA/PMI No.:

## NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED 02/05/2007. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

NDEX WEST, LLC, as duly appointed Trustee under and pursuant to Deed of Trust Recorded on 02/16/2007 as Instrument No. 2007-0047853-00 of official records in the office of the County Recorder of CONTRA COSTA County, State of CALIFORNIA.

EXECUTED BY:  **LESLIE LOU KISH,**
WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH, CASHIER'S CHECK/CASH EQUIVALENT or other form of payment authorized by 2924h(b), (payable at time of sale in lawful money of the United States).
DATE OF SALE:    09/15/2010        TIME OF SALE:        10:00 AM
PLACE OF SALE:    AT THE COURT STREET ENTRANCE TO THE COUNTY COURTHOUSE, 725 COURT STREET (CORNER OF MAIN AND COURT STREET), MARTINEZ, CA.
STREET ADDRESS and other common designation, if any, of the real property described above is purported to be:
                2135 ASCOT DR # 7, MORAGA, CALIFORNIA 94556
APN#:            255-740-007-0

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. Said sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed of Trust, with interest thereon, as provided in said note(s), advances, under the terms of said Deed of Trust, fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust. The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is $371,232.20.   The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell to be recorded in the county where the real property is located.

FOR TRUSTEE SALE INFORMATION PLEASE CALL:
AGENCY SALES & POSTING
3210 EL CAMINO REAL, SUITE 200
IRVINE, CA 92602
714-730-2727
www.lpsasap.com

NDEx West, L.L.C. MAY BE ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

**NDEx West, L.L.C. as Trustee**

_____  Dated: 08/26/2010

BY: Jesus Angulo

FCUS_NoticeOfTrusteeSale.rpt - Record - 07/22/2010 - Ver-28                                          Page 1 of 1

"EXHIBIT B"

4

Recording Requested By:

**Jeffrey D. Arnold, Trustee**
**P.O. Box 597**
**Orinda, CA 94563**

Mail Tax Statements to:
A RETURN DOCUMENT TO:
**Christopher J. Solberg**
**1966 Mohawk Dr.**
**Pleasant Hill, CA 94523-3126**

CONTRA COSTA Co Recorder Office
STEPHEN L. WEIR, Clerk-Recorder
**DOC- 2010-0181380-00**

Monday, AUG 30, 2010 11:01:21
CPY    $4.00.MOD    $4.00:REC    $14.00
FTC    $3.00:RED    $1.00:GRD    $1.00
Ttl Pd    $27.00    Nbr-0000573842
rrc/R9/1-4

| APN NO: | 255-740-007 | |
|---|---|---|
| TS NO: | 2009-311 | **CALIFORNIA** |
| LOAN TYPE: | **Private** | |

## TRUSTEE'S DEED UPON SALE

The undersigned grantor declares under penalty of perjury:
1) The grantee herein **WAS** the foreclosing beneficiary.
2) The amount of the unpaid debt together with costs was...**$64,209.33**
3) The amount paid by the grantee at the trustee sale was...**$5,000.00**
4) The documentary transfer tax is...............................**$0.00**
5) Said property is **INCORPORATED/UNINCORPORATED**

And **Jeffrey D. Arnold (herein called Trustee)**, as the duly appointed Trustee under Deed of Trust herpinafter described, does hereby grant & convey, but without warranty, express or implied to:

### Christopher J. Solberg

(herein called Grantee), all of it's right, title and interest in and to that certain property situated in the County of **CONTRA COSTA**, State of **CALIFORNIA**, described as follows:

### SEE EXHIBIT "A" ATTACHED HERETO AND INCORPORATED HEREIN FOR ALL PURPOSES.

RECITALS:
This conveyance is made pursuant to the powers conferred upon Trustee by that certain Deed of Trust dated **4/10/2007** and executed by,

**LESLIE L. KISH, an unmarried woman**

**Page 1 of 2**

APN NO:   **255-740-007**
TS NO.    **2009-311**            **CALIFORNIA**
LOAN TYPE:  **Private**

# TRUSTEE'S DEED UPON SALE

As Trustor, and recorded 4/11/2007 as Document No.2007-106483 in the Official Records of **CONTRA COSTA** County, CALIFORNIA, and after fulfillment of the conditions specified in said Deed of Trust authorizing this conveyance.

Default occurred as set forth in a Notice of Default and Election to Sell which was recorded in the office of the Recorder of said County.

All requirements of the law regarding the mailing of copies of notices or the publication of a copy of the Notice of Default or the personal delivery of the copy of the Notice of Default and the posting and publication of copies of the Notice of sale have been met.

Said property was sold by said Trustee at public auction on 8/30/2010 at the place named in the Notice of Sale, in the County of **CONTRA COSTA**, CALIFORNIA, in which the property is situated. Grantee, being the highest bidder at such sale, became the purchaser of said property and paid therefore to said trustee the amount of **$5,000.00** in lawful money of the United States, or by the satisfaction, pro tanto, of the obligations then secured by said Deed of Trust.

Date: **August 30, 2010**

BY: _____
**JEFFREY D. ARNOLD, TRUSTEE**

State of   **CALIFORNIA**
County of  **CONTRA COSTA**

On **August 30, 2010** before me, _Evelyn F Clemons_ the undersigned Notary Public, personally appeared **JEFFREY D. ARNOLD** ~~personally known~~ to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person or the entity upon behalf of which the person acted, executed the instrument.

**WITNESS my hand and official seal:**

_____
(Signature)

EVELYN F. CLEMONS
Commission # 1867739
Notary Public - California
Contra Costa County
My Comm. Expires Oct 10, 2013

(Notarial Seal)

**Page 2 of 2**



Exhibit A                                    428843

All that certain real property situate in the City of Moraga, County of Contra Costa, State of California, described as follows:

PARCEL ONE:

An undivided 3.133 percent (%) in and to Parcel "A" as shown on the Map of "Subdivision 4524 The Cedars...Contra Costa County, California", filed July 18, 1974, Map Book 171, Page 14, Contra Costa County Records.

EXCEPTING FROM PARCEL ONE:

A.  Units 1 through 30 inclusive, as shown on the Condominium Plan attached as Exhibit "B" to the Declaration of Covenants, Conditions and Restrictions recorded July 18, 1974, in Book 7277 at Page 6, under Recorder's Series No. 62985, Official Records of Contra Costa County.

B.  Exclusive easements for the use, occupancy and possession of parking stalls and patios as said parking stalls and patios are shown on the Condominium Plan above referred to.

PARCEL TWO:

Unit 7, as shown upon the Condominium Plan above referred to.

PARCEL THREE:

An exclusive easement for the use, occupancy and possession of Parking Stall 38 as shown on the Condominium Plan above referred to.

PARCEL FOUR:

An exclusive easement for the use, occupancy, and possession of Patio P.A.-7 as shown on the Condominium Plan above referred to.

**END OF DOCUMENT**

"EXHIBIT C"

## NDEx West, LLC

15000 Surveyor Boulevard, Suite 500
Addison, Texas  75001
Telephone: (866) 795-1852    Fax: (972) 661-7800

September 03, 2010

.
CHRISTOPHER SOLDBERG

RE:   Loan No:              0045049954
      Borrower:             LESLIE LOU KISH
      Property Address:     2135 ASCOT DR # 7
                            MORAGA, CA  94556
      NDEx West File No.:   20100015004954

Dear CHRISTOPHER SOLDBERG:

**PLEASE BE ADVISED THAT THIS OFFICE IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A
DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

Enclosed please find a reinstatement quote good through September 14, 2010. **In order to have sufficient time to
pull the property from the foreclosure sale, please be advised our office must receive the reinstatement
funds by 5:00 p.m. CST on September 14, 2010.**

The reinstatement funds must be remitted in the form of cashier's checks or money orders made payable to WELLS
FARGO BANK, N.A., A/K/A WACHOVIA MORTGAGE, A DIVISION OF WELLS FARGO BANK, N.A.
AND F/K/A WACHOVIA MORTGAGE, FSB for the total amount due indicated on the enclosed reinstatement
quote.   No personal checks will be accepted.   Please include your loan number 0045049954 and the NDEx West
File Number 20100015004954 on your remittance.

If you have any questions concerning the reinstatement instructions or quote, please contact our NDEx West
Homeowners Assistance Department at (866) 795-1852.

Sincerely,

NDEx West Homeowners Assistance Dept.

Enclosure

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGEMENT

State of California
County of Contra Costa

On $08-30-2010$ , before me, Evelyn F. Clemons, Notary Public.

Personally appeared, _Jeffrey D. Arnold_

Who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that He/She/They executed the same in His/Her/Their authorized capacity(ies), and that by His/Her/Their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under Penalty Of Perjury under the laws of the State of California that the foregoing paragraph is true and correct

Witness my hand and official seal.

EVELYN F. CLEMONS
Commission # 1867739
Notary Public - California
Contra Costa County
My Comm. Expires Oct 10, 2013

Title or type of Document _Trustee's Deed upon Sale_
Document Date $08-30-10$ Number of pages _2 + Attachment / perment_

Signers other than named above,_____

Wachovia Mortgage
P.O. Box 659558
San Antonio, TX 78265-9558



Leslie Lou Kish
0045049954
September 17, 2010
Page 2

**WACHOVIA**

To remit your balance due by mail or wire, please send to:

| Mail | Wire |
|------|------|
| Wachovia Mortgage | Wachovia Mortgage |
| Attn: Cashiering Dept T7416-023 | ABA/RT: 053000219 |
| 4101 Wiseman Blvd | Account No.: 01131510715329 |
| San Antonio, Texas 78251 | Reference Loan Number |

As a reminder, you are required by your Note and Security Instrument
to continue to meet and pay other obligations including, payment and
maintenance of insurance, property taxes, HOA/PUD fees, and other
assessments. If you are unable to make future payments on the
loan, pay property taxes, provide proof of hazard insurance, maintain
the collateral, or pay other obligations as required by the Note and
Security Instrument, the beneficiary or mortgagee may insist that
you do so in order to reinstate your account in good standing. In
addition, the beneficiary or mortgagee may require, as a condition of
reinstatement, that you provide reliable written evidence that all
senior liens, property taxes, and insurance premiums are paid current.

Payment in accordance with this reinstatement quote may not be
sufficient to cure all defaults of the Note and Security Instrument.
You should review any previously issued Notices of Intent to Foreclose
or Notices of Default to determine if any non-monetary defaults remain
outstanding. Unless all defaults are cured, foreclosure sale
proceedings will continue.

This reinstatement quote may or may not include advances for insurance,
property taxes and other assessments. If Wachovia Mortgage advanced
delinquent property taxes, hazard/flood insurance, or other assessments
on your behalf, you may be required to make payment into an escrow
account with Wachovia Mortgage. You will be notified in writing upon
the reinstatement of your loan as to specific requirements, if any.

Thank you for your attention to this matter.

Foreclosure Department

XF613 057 BPN


NOTICE: Please be advised that Wachovia Mortgage may be attempting to
collect a debt. If you are currently in bankruptcy or your debt has
been discharged in bankruptcy, Wachovia Mortgage is only exercising
its rights against the property and is not attempting to hold you
personally liable on the Note.

Page 1 of 6)

"EXHIBIT E"

WORLD SAVINGS BANK, FSB

# ADJUSTABLE RATE MORTGAGE NOTE

## PICK-A-PAYMENT℠ LOAN

### GDW AVERAGE DEPOSIT ACCOUNT RATE (COST OF SAVINGS) INDEX

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, MY MONTHLY PAYMENT AND MY UNPAID PRINCIPAL BALANCE. MY MONTHLY PAYMENT INCREASES, MY INTEREST RATE INCREASES AND MY PRINCIPAL BALANCE INCREASES ARE LIMITED. THIS NOTE IS SECURED BY A SECURITY INSTRUMENT OF THE SAME DATE.

LOAN NUMBER: 0045049954                          DATE: **February 5, 2007**

BORROWER(S):  LESLIE LOU KISH, AN UNMARRIED WOMAN   sometimes called "Borrower" and sometimes simply called "I" or "me "

PROPERTY ADDRESS: 2135 ASCOT DR # 7, MORAGA, CA  94556-2280

**1.  BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U S  $315,250.00 , called "Principal," plus interest, to the order of the Lender  The Lender is WORLD SAVINGS BANK, FSB, a FEDERAL SAVINGS BANK, ITS SUCCESSORS AND/OR ASSIGNEES, or anyone to whom this Note is transferred.

**2.  INTEREST**

(A)  Interest Rate
Interest will be charged on unpaid Principal until the full amount of Principal has been paid.  I will pay interest at the yearly rate of 7.550%  The interest rate I will pay may change as described in this Section 2  Interest will be charged on the basis of a twelve month year and a thirty day month

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note

(B)  Interest Change Dates
The interest rate I will pay may change on the 1st day of April, 2007 and on the same day every month thereafter  Each date on which my interest rate could change is called an "Interest Change Date." The new rate of interest will become effective on each Interest Change Date

(C)  Interest Rate Limit
My lifetime maximum interest rate limit is 12.250%, called "Lifetime Rate Cap."



LENDER'S USE ONLY

Wachovia Mortgage
P.O. Box 659558
San Antonio, TX 78265-9558

"EXHIBIT D"



September 17, 2010                                    Loan Number: 0045049954 **WACHOVIA**

REINSTATEMENT QUOTE

Leslie Lou Kish
Po Box 142
Moraga, CA 94556 0142

Customer: Leslie Lou Kish
Property: 2135 Ascot Dr, Moraga CA 94556

Dear Sir or Madam:

Please find the breakdown of the total amount due to reinstate the
above loan from foreclosure status as indicated below. Should you
have any questions, please contact us at 800-282-3458. A
representative is available to assist you Monday through Friday,
9:00 a.m. to 6:00 p.m., Eastern Time.

Breakdown of Total Due to Reinstate:
    23 payment(s):                                      36,192.75
    Advance(s): Escrow                                        .00
    Accrued Late Charge:                                  1,712.96
    Miscellaneous Fee(s):
           CORPORATE ADVANCE                           285.00
           OTHER FEES                                  455.20
           Foreclosure                               2,901.37
    Less: Credit (Suspense)                           <      .00>
                                      -----------------------
    Total required to reinstate loan in full             41,547.28
    Property Preservation/Inspection Fees                    140.00
    NSF Fees                                                 .00
TOTAL REQUIRED TO REINSTATE LOAN AND RELATED              41,687.28
WACHOVIA MORTGAGE CHARGES (Good through 09-22-10)

Only certified funds will be accepted to reinstate this loan. All
personal and/or business checks, partial funds, and cash will be
returned.

Please note that we do not recognize mailing postmark dates.
Therefore, the amount quoted above must be received in our San Antonio
office no later than 4:00 p.m., Eastern Time, on 09-22-10.
After this date, additional amounts may become due.

XF613 057 BPN

**NDEx West, L.L.C.**
15000 Surveyor Boulevard, Suite 500
Addison, Texas  75001
Telephone: (866) 795-1852    Fax: (972) 661-7800

**REINSTATEMENT QUOTE**

The above figures were provided by our client and are subject to final verification. Our client
reserves the right to collect additional amounts as necessary to complete the reinstatement.

### NDEx West, L.L.C.

15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001
Telephone: (866) 795-1852    Fax: (972) 661-7800

#### REINSTATEMENT QUOTE

20100015004954

.

| | | | |
|---|---|---|---|
| Date: | 09/03/2010 | Mortgage Company: | |
| | | | WELLS FARGO BANK, N.A., A/K/A |
| | | | WACHOVIA MORTGAGE, A DIVISION OF |
| | | | WELLS FARGO BANK, N.A. AND F/K/A |
| | | | WACHOVIA MORTGAGE, FSB |
| To: | CHRISTOPHER SOLDBERG | Mortgagor: | LESLIE LOU KISH |
| Phone: | | Loan Number: | 0045049954 |
| Fax: | | File Number: | 20100015004954 |
| From: | NDEx West Homeowners Assistance Dept. | Sale Date: | 09/15/2010 |

**OUR OFFICE IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT.  ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

As you requested, the figures stated below are provided by our client and have been calculated good through **September 14, 2010** and must be received by this office no later than 5:00 p.m. CST on **September 14, 2010.**

The total amount due listed below should be remitted to the above address in one check made payable to  WELLS FARGO BANK, N.A., A/K/A WACHOVIA MORTGAGE, A DIVISION OF WELLS FARGO BANK, N.A. AND F/K/A WACHOVIA MORTGAGE, FSB  All funds must be in the form of a cashier's check or money order.  No personal checks.

| | | | |
|---|---|---|---:|
| **Payment - 6 Payment(s) AT $1,564.81** | = | $ | 9,388.86 |
| **Payment - 6 Payment(s) AT $1,677.47** | = | $ | 10,064.82 |
| **Payment - 6 Payment(s) AT $1,569.52** | = | $ | 9,417.12 |
| **Payment - 5 Payment(s) AT $1,464.39** | = | $ | 7,321.95 |
| **Late Charges - 1 Payment(s) AT $1,620.12** | = | $ | 1,620.12 |
| **Late Charges - 1 Payment(s) AT $92.84** | = | $ | 92.84 |
| **Other Debit Charge - Other Fees / 1 Payment(s) AT $555.20** | = | $ | 555.20 |
| **Property Inspection  / 1 Payment(s) AT $10.00** | = | $ | 10.00 |
| **Appraisal/BPO** | = | $ | - |
| **NSF Charges** | = | $ | - |
| **Suspense** | = | $ | - |
| **Corporate Advance Charges** | = | $ | 30.00 |
| **Escrow Balance** | = | $ | - |
| **Previous Foreclosure Fees** | = | $ | - |
| **Amount Due** | = | $ | 38,500.91 |
| **Trustee Fees** | = | $ | 2,934.44 |
| **Total Amount Due WELLS FARGO BANK, N.A., A/K/A WACHOVIA MORTGAGE,** | = | $ | 41,435.35 |

0045049954

**(D)  Index**

Beginning with the first Interest Change Date, my interest rate will be based on an "Index." The Index is the weighted average of the interest rates in effect as of the last day of each calendar month on the deposit accounts of the federally insured depository institution subsidiaries ("Subsidiaries") of Golden West Financial Corporation ("GDW"), as made available by GDW. Included in the deposit accounts for purposes of the Index calculation are all of the same and adjustments that GDW uses to calculate the line item currently called "cost of deposits" that appears in its quarterly and annual reports to shareholders as well as in other financial reports publicly distributed by GDW. The Index does not include deposit accounts owned by GDW or its Subsidiaries or other affiliates. The calculation of the Index includes adjustments for the effects of financial instruments related to the deposit accounts and other adjustments determined by GDW in its sole discretion as appropriate to accurately reflect the weighted average of interest rates on the deposit accounts. If an index is substituted as described in Section 2(F) of this Note, the alternative index will become the Index. The most recent Index figure available on each Interest Change Date is called the "Current Index."

**(E)  Calculation of Interest Rate Changes**

Lender will calculate my new interest rate by adding **2.900** percentage points, called the "Margin," to the Current Index. Subject to the limit stated in Section 2(C) above, the result of this calculation will be my new interest rate until the next Interest Change Date.

If Lender fails to utilize the entire interest rate increase to which it is entitled under this Note on any Interest Change Date by failing to add all or part of the allowable Margin to the Current Index, then Lender may add any such allowable Margin to the Current Index on any future Interest Change Date. Lender may not, at a later date, "carryover" or add interest to which it is not entitled under this Note on any Interest Change Date.

**(F)  Alternative Index**

The Lender may choose an alternative index to be the Index if the Index is no longer available. For purposes of this Section 2(F) the Index is not "available" if  (a) the Index is for any reason no longer published, or (b) the Lender, in its sole discretion, determines that the Index is calculated in a substantially different manner or based on substantially different information than at the time the Index became applicable to this Note, or (c) applicable laws or regulations prevent the Lender from using the Index to calculate interest under this Note. The selection of the alternative index shall be at Lender's sole discretion. The alternative index may be a national or regional index or another type of index approved by Lender's primary regulator. The Lender will give me notice of the alternative index.

**3.  PAYMENTS**

**(A)  Time and Place of Payments**

I will pay Principal and Interest by making payments every month.

I will make my monthly payments on the 1st day of each month beginning on **April 1, 2007.** I will make these payments every month until I have paid (i) all the Principal and interest, and (ii) any other charges described below that I may owe under this Note, and (iii) any charges that may be due under the Security Instrument. If, on **March 1, 2037,** I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **1901 HARRISON STREET, OAKLAND, CALIFORNIA 94612** or at a different place if required by notice from the Lender.

**(B)  Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. **$ 1,245.62**. This amount will change as described in Sections 3(C) and 3(D) below. My initial monthly payment amount was selected by me from a range of initial payment amounts approved by Lender and may not be sufficient to pay the entire amount of interest accruing on the unpaid Principal balance.

**(C)  Payment Change Dates**

My monthly payment will change as required by Section 3(D) below beginning on the **1st** day of **April, 2008** and on that day every **12th** month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment will also change at any time Section 3(F) or 3(G) below requires me to pay a different amount.

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date and as provided in Section 3(F) or 3(G) below.

**(D)  Calculation of Payment Changes**

Subject to Sections 3(F) and 3(G), on the Payment Change Date my monthly payment may be changed to an amount sufficient to pay the unpaid principal balance, including any deferred interest as described in Section 3(E) below, by the Maturity Date. However, the amount by which my payment can be increased will not be more than 7-1/2% of the then existing Principal and Interest payment. This 7-1/2% limitation is called the "Payment Cap." The Lender will perform this Payment Change calculation at least 60 but not more than 90 days before the Payment Change Date.

0045049954

**(E)   Deferred Interest; Additions to My Unpaid Principal**

From time to time, my monthly payments may be insufficient to pay the total amount of monthly interest that is due  If this occurs, the amount of interest that is not paid each month, called "Deferred Interest," will be added to my Principal and will accrue interest at the same rate as the Principal.

**(F)   Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid principal balance can never exceed **125%** of the Principal I originally borrowed, called "Principal Balance Cap."  If, as a result of the addition of deferred interest to my unpaid principal balance, the Principal Balance Cap limitation would be exceeded on the date that my monthly payment is due, I will instead pay a new monthly payment.  Notwithstanding Sections 3(C) and 3(D) above, I will pay a new monthly payment which is equal to an amount that will be sufficient to repay my then unpaid principal balance in full on the Maturity Date at the interest rate then in effect, in substantially equal payments

**(G)   Payment Cap Limitation; Exceptions**

Beginning with the **10th** Payment Change Date and every 5th Payment Change Date thereafter, my monthly payment will be calculated as described in Section 3(D) above except that the Payment Cap limitation will not apply.  Additionally, the Payment Cap limitation will not apply on the final Payment Change Date.

**(H)   Notice of Payment Changes**

The Lender will deliver or mail to me a notice of any changes in the amount of my monthly payment, called "Payment Change Notice," before each Payment Change Date  The Payment Change Notice will include information required by law

**4.   FAILURE TO MAKE ADJUSTMENTS**

If for any reason Lender fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Lender may, upon discovery of such failure, then make the adjustments as if they had been made on time  I also agree not to hold Lender responsible for any damages to me which may result from Lender's failure to make the adjustment and to let the Lender, at its option, apply any excess monies which I may have paid to partial prepayment of unpaid Principal

**5.   BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due.  A payment of Principal before it is due is called a "Prepayment". When I make a Prepayment, I will tell the Lender in writing that I am doing so.  The Lender may require that any partial Prepayments be made on the date my regularly scheduled payments are due. If I make a partial Prepayment, there will be no changes in the due dates or amount of my regularly scheduled payments unless the Lender agrees to those changes in writing.  I may pay deferred interest on this Note at any time without charge and such payment will not be considered a "Prepayment" of Principal.  During the first 3 years of the loan term if I make one or more Prepayments that, in the aggregate, exceed $5,000 in any calendar month, I must pay a prepayment charge equal to 2% of the amount such Prepayments exceed $5,000 in that calendar month. After the first 3 years of the loan term, I may make a full or partial Prepayment without paying any prepayment charge.

**6.   MAXIMUM LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Lender may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me  If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.   BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A)   Late Charges for Overdue Payments**

If the Lender has not received the full amount of any monthly payment by the end of **10** calendar days after the date it is due, I will pay a late charge to the Lender  The amount of the charge will be **6.00%** of my overdue payment of Principal and interest  I will pay this late charge promptly but only once on each late payment

0045049954

**Exception to Acceleration of Payment of Sums Secured.** If the sale or transfer of all or any part of the Property, or of a beneficial Interest in Borrower, if Borrower is not a natural Person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if,

(i)    Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender,

(ii)   Lender approves the creditworthiness of the transferee in writing,

(iii)  transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards,

(iv)   an assumption fee, in an amount to be determined by Lender (but not to exceed 1% of the balance of Principal and interest due under the Secured Notes at the time of sale or transfer of the Property or of the interest in the Borrower) is paid to Lender; and

(v)    the transferee executes an assumption agreement which is satisfactory to Lender

The loan may be assumed under its then existing terms and conditions with one exception, the Lifetime Rate Cap may be changed  The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Notes

**12. GOVERNING LAW; SEVERABILITY**

This Note shall be governed by and construed under federal law and federal rules and regulations including those for federally chartered savings institutions, called "Federal Law." In the event that any of the terms or provisions of this Note are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Note.

**13. CLERICAL ERRORS**

In the event the Lender at any time discovers that this Note or the Security Instrument or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from the Lender, to reexecute any Loan Documents that are necessary to correct any such error(s) and I also agree that I will not hold the Lender responsible for any damage to me which may result from any such error

**14. LOST, STOLEN OR MUTILATED DOCUMENTS**

If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Lender delivers to me an indemnification in my favor, signed by the Lender, then I will sign and deliver to the Lender a Loan Document identical in form and content which will have the effect of the original for all purposes

**THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS**

age 6 of 6)

0045049954

**SIGNATURE PAGE**

**NOTICE TO BORROWER(S):**

**BY SIGNING THIS NOTE YOU AGREE TO PAY A PREPAYMENT CHARGE IN CERTAIN CIRCUMSTANCES. PLEASE CAREFULLY READ THIS ENTIRE NOTE (INCLUDING THE PREPAYMENT PROVISION) BEFORE YOU SIGN IT.**

**WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED**

**(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)**

**BORROWER(S):**

_____ (Seal)
LESLIE LOU KISH

0045049954

**(B)   Default**

I will be in default if (i) I do not pay the full amount of each monthly payment on the date it is due; or (ii) I fail to perform any of my promises or agreements under this Note or the Security Instrument, or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts, or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading

**(C)   Notice of Default**

If I am in default, the Lender may send me a written notice, called "Notice of Default," telling me that if I do not pay the overdue amount by a certain date, the Lender may require me to pay immediately the amount of Principal which has not been paid and all the interest that I owe on that amount, plus any other amounts due under the Security Instrument.

**(D)   No Waiver by Lender**

Even if, at a time when I am in default, the Lender does not require me to pay immediately in full as described above, the Lender will still have the right to do so if I am in default at a later time

**(E)   Payment of Lender's Costs and Expenses**

The Lender will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law  Those expenses may include, for example, reasonable attorneys' fees and court costs

**8.   GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me or any Borrower at **79 HARDIE DR, MORAGA, CA  94556-1133**, or at a single alternative address if I give the Lender notice of my alternative address  I may give notice to Lender of a change in my address in writing or by calling Lender's customer service telephone number provided on my billing statement  I may designate only one mailing address at a time for notification purposes

Except as permitted above for changes of address, any notice that must be given to the Lender under this Note will be given by mailing it by first class mail to the Lender at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address

**9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed  Any person who takes over these obligations is also obligated to keep all of the promises made in this Note  The Lender may enforce its rights under this Note against each person individually or against all of us together  This means that any one of us may be required to pay all of the amounts owed under this Note

**10.   WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor  "Presentment" means the right to require the Lender to demand payment of amounts due  "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid

**11.   SECURED NOTE - ACCELERATION**

In addition to the protections given to the Lender under this Note, the Security Instrument dated the same date as this Note gives the Lender security against which it may proceed if I do not keep the promises which I made in this Note  That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note and includes the following Paragraph **26**:

AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED

Acceleration of Payment of Sums Secured. Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission  Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission  However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration  If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me

(Quote #1, Exhibit C in First Amended Verified Complaint).

2.      Defendant NDEx West, LLC, was a participant in the effort to prevent Plaintiff from learning the terms of the underlying obligation, the complete terms of the reinstatement offered, and participated by intentionally telling Plaintiff to call other Defendants rather than supplying information they themselves had on hand.

3.      Defendant NDEx is NOT being named solely for acting in its capacity as trustee under a deed of trust and Plaintiff IS asserting claims for money damages against NDEx West, LLC.

I declare under penalty of perjury under the laws of the State of California that the foregoing facts are true and correct.

Dated:  October 11th, 2010                    CHRISTOPHER J. SOLBERG


                                       By: _____
                                          Christopher J. Solberg
                                          Plaintiff in Pro Per, Declarant

-2-

OBJECTION TO FILING OF NON-MONETARY STATUS BY NDEX WEST LLC          Case No.

POS-030

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Christopher J. Solberg<br>1966 Mohawk Dr.<br>Pleasant Hill, CA 94523<br><br>TELEPHONE NO 510-932-5252          FAX NO *(Optional)*<br>E-MAIL ADDRESS *(Optional)* maricopas@sbcglobal.net<br>ATTORNEY FOR *(Name)* Plaintiff In Pro Per | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF CONTRA COSTA

STREET ADDRESS 725 Court St.

MAILING ADDRESS Martinez, CA

CITY AND ZIP CODE 94553

BRANCH NAME A.F. Bray Court Building

PETITIONER/PLAINTIFF: Christopher J. Solberg

RESPONDENT/DEFENDANT: NDEx West, L.L.C.; WACHOVIA MORTGAGE; WELLS FARGO BANK, FSB

| PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL | CASE NUMBER<br>C10-02667 |
|---|---|

*(Do not use this Proof of Service to show service of a Summons and Complaint.)*

1. I am over 18 years of age and not a party to this action. I am a resident of or employed in the county where the mailing took place.

2. My residence or business address is:

   3260 Maricopa Ave. Richmond, CA 94804

3. On *(date):* 10/12/10          I mailed from *(city and state):* Pleasant Hill, CA.
   the following documents *(specify):*

   First Amended Verified Complaint; Objection to Filing of Declaration of Non-Monetary Status by NDEx WEST, L.L.C.

   ☐ The documents are listed in the *Attachment to Proof of Service by First-Class Mail—Civil (Documents Served)* (form POS-030(D)).

4. I served the documents by enclosing them in an envelope and *(check one):*
   a. ☑ depositing the sealed envelope with the United States Postal Service with the postage fully prepaid.
   b. ☐ placing the envelope for collection and mailing following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.

5. The envelope was addressed and mailed as follows:
   a. Name of person served:  Michael Rapkine
   b. Address of person served:

   Michael Rapkine
   Attorney for Wells Fargo & WACHOVIA MORTGAGE
   199 South Los Robles Avenue, Suite 600
   Pasadena, CA 91101-2459
   ☐ The name and address of each person to whom I mailed the documents is listed in the *Attachment to Proof of Service by First-Class Mail—Civil (Persons Served)* (POS-030(P)).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 10/12/10

Doris A. Bergman
(TYPE OR PRINT NAME OF PERSON COMPLETING THIS FORM)                    ▶ *(signature)*
(SIGNATURE OF PERSON COMPLETING THIS FORM)

Form Approved for Optional Use<br>Judicial Council of California<br>POS-030 [New January 1, 2005]

PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL
(Proof of Service)

Code of Civil Procedure, §§ 1013, 1013a
www.courtinfo.ca.gov

1  Christopher J. Solberg
   1966 Mohawk Drive
2  Pleasant Hill, CA 94523
   maricopaa@sbcglobal.net
3  Telephone: (510) 932-5252

4  Plaintiff In Pro Per

5

6

7

8              SUPERIOR COURT OF CALIFORNIA

9                COUNTY OF CONTRA COSTA

10

11  CHRISTOPHER J. SOLBERG,

12          Plaintiff,                CASE NO. C10 - 02667

13       v.                           UNLIMITED CIVIL

14  NDEx West, L.L.C.; WACHOVIA       OBJECTION TO FILING OF
    MORTGAGE; WELLS FARGO BANK,
15  FSB; and DOES 1 through 20, inclusive,   DECLARATION OF NON-MONETARY

16          Defendants.               STATUS BY NDEX WEST, LLC

17

18        ╱                          ASSIGNED FOR ALL PURPOSES TO:

19                                    HON. JUDITH CRADDICK, DEPT. 9

20

21

22  ALL INTERESTED PARTIES are hereby notified that Plaintiff Christopher J. Solberg does

23  hereby object to the filing of NON-MONETARY STATUS under California Civil Code Section

24  2924l by NDEx West, LLC on September 29th, 2010.

25
    I, CHRISTOPHER J SOLBERG, Plaintiff, declare as follows:
26

27     1.      Defendant NDEx West, LLC was a participant in the fraud and misrepresentation

28          against Plaintiff by submitting to Plaintiff a fraudulent or misleading reinstatement quote

                                    -1-

POS-030

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Christopher J. Solberg<br>1966 Mohawk Dr.<br>Pleasant Hill, CA 94523<br><br>TELEPHONE NO 510-932-5252     FAX NO. *(Optional)*<br>E-MAIL ADDRESS *(Optional)* maricopaa@sbcglobal.net<br>ATTORNEY FOR *(Name)* Plaintiff In Pro Per | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF CONTRA COSTA
STREET ADDRESS 725 Court St.
MAILING ADDRESS Martinez, CA
CITY AND ZIP CODE 94553
BRANCH NAME A.F. Bray Court Building

PETITIONER/PLAINTIFF: Christopher J. Solberg

RESPONDENT/DEFENDANT: NDEx West, L.L.C.; WACHOVIA MORTGAGE; WELLS FARGO BANK, FSB

| PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL | CASE NUMBER<br>C10-02667 |
|---|---|

*(Do not use this Proof of Service to show service of a Summons and Complaint.)*

1. I am over 18 years of age and not a party to this action. I am a resident of or employed in the county where the mailing took place.

2. My residence or business address is:

   3260 Maricopa Ave. Richmond, CA 94804

3. On *(date):* 10/12/10          I mailed from *(city and state):* Pleasant Hill, CA.
   the following documents *(specify):*

   First Amended Verified Complaint; Objection to Filing of Declaration of Non-Monetary Status by NDEx WEST, L.L.C.

   ☐ The documents are listed in the *Attachment to Proof of Service by First-Class Mail—Civil (Documents Served)* (form POS-030(D)).

4. I served the documents by enclosing them in an envelope and *(check one):*
   a. ☑ depositing the sealed envelope with the United States Postal Service with the postage fully prepaid.
   b. ☐ placing the envelope for collection and mailing following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.

5. The envelope was addressed and mailed as follows:
   a. Name of person served: Michael Rapkine
   b. Address of person served:

      Michael Rapkine
      Attorney for Wells Fargo & WACHOVIA MORTGAGE
      199 South Los Robles Avenue, Suite 600
      Pasadena, CA  91101-2459
      ☐ The name and address of each person to whom I mailed the documents is listed in the *Attachment to Proof of Service by First-Class Mail—Civil (Persons Served)* (POS-030(P)).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 10/12/10

Doris A. Bergman
(TYPE OR PRINT NAME OF PERSON COMPLETING THIS FORM)          ▶ *(signature)*          (SIGNATURE OF PERSON COMPLETING THIS FORM)

Form Approved for Optional Use
Judicial Council of California
POS-030 [New January 1, 2005]          **PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL**
(Proof of Service)          Code of Civil Procedure, §§ 1013, 1013a
www.courtinfo.ca.gov